## Frank Chambers, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 19,835.

STREET RAILROADS, § 97*—*when crossing ahead of an approaching street car is not contributory negligence.* At the trial of a suit brought for personal injuries received as a result of a collision of the defendant's street car with a single-horse buggy driven by a companion of the plaintiff, it appeared, among other things, that the plaintiff might have assumed control of the driving of the horse had he wished; that the buggy was driven across the car line at right angles in the face of the approaching car; that the plaintiff saw the approaching car; that he supposed it was coming at an ordinary rate of speed; and that he felt sure it was far enough away for the buggy to clear the track. *Held,* that the issue as to the plaintiff's exercise of due care for his own safety was properly submitted to the jury, and that, upon the whole evidence, a finding by the reviewing court that the plaintiff was guilty of contributory negligence would not be justified.

Appeal from the Superior Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed October 8, 1914. Rehearing denied October 20, 1914.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

CHARLES LeROY BROWN, for appellant.

RICE & O'NEIL and CASWELL & HEALY, for appellee.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

This case is in this court for the second time. It was brought to recover damages for personal injuries sustained by the plaintiff in a street crossing collision between one of appellant's street cars and a single-horse buggy in which the plaintiff and a companion named Hunt were riding. Upon the first trial, the plaintiff recovered a judgment for ten thousand dollars, which was reversed and the cause remanded on account of errors in the admission of evidence and in one of the instructions. *Chambers v. Chicago City Ry. Co.*, 175 Ill. App. 362. Upon the second trial, a verdict for four thousand dollars was returned and judgment was entered for that amount. The defendant again appeals.

It is urged on behalf of appellant that the judgment should be reversed because of the alleged contributory negligence of the plaintiff. Appellant's counsel insists that there is no evidence in the record which shows that the plaintiff exercised ordinary care for his own safety, and that therefore the trial court should have directed a verdict for the defendant, but (he adds) "inasmuch as it is not necessary, in order to entitle appellant to a reversal of the judgment, that plaintiff's conduct be pronounced negligent as a matter of law, we are indifferent, in this court, whether a finding of contributory negligence be made as a conclusion of law or as a conclusion of fact." This contention necessarily requires us to examine the whole of the evidence, for the double purpose of ascertaining, first, whether there is any evidence from which, if it stood alone, the jury could, "without acting unreasonably in the eye of the law,"

find that the averment of due care on the part of the plaintiff has been proved (*Libby, McNeill & Libby v. Cook*, 222 Ill. 206) ; and second, whether upon the whole record, and as a pure question of fact, the verdict is manifestly contrary to the preponderance of the evidence upon this point.

The accident happened about 1:15 A. M. on a clear summer night in August, 1907, at the intersection of State and Congress streets in Chicago. Appellant operates a double-track electric street car line on State street. The west track is used for southbound cars and the east track for northbound cars. The total width of both tracks, including the space between the two, is fifteen feet. Congress street runs east from State street to Michigan boulevard, but does not run west. The first street north of Congress is Van Buren street and the first street south is Harrison street. There is an elevated railway on Van Buren street, crossing State street. At the time of the accident, the plaintiff lived on Woodlawn avenue near Fifty-Fourth street, was twenty-three years of age and was employed by a tunnel construction company. His place of work at that time was at a tunnel shaft located at Kingsbury and Indiana streets, which is north of the river, a considerable distance north of Congress street, and five blocks west of State street. Joseph Hunt, a young man about the same age as the plaintiff, worked at the same place at timekeeper, and lived in the same neighborhood. Chambers' father owned an open, single-seated buggy, and Chambers and a friend named Burke together owned a horse. On the day preceding the accident, Chambers had worked at the tunnel shaft all day and reached home about 7:30 P. M. As he was dressing after supper, Hunt called and a drive was suggested, having for its ultimate object a visit to the tunnel shaft about midnight. The plaintiff told Hunt to hitch up the horse, which was kept in a nearby barn. Hunt did so, and throughout the evening, Hunt did the driving, sitting on the right-hand

side of the buggy. They started from the barn about
nine o'clock in the evening. They drove first to a
cigar store, then to an undertaking establishment, of
which Hunt's brother was a part owner, stopped there
for a while, then drove north towards Twenty-Second
street, stopping at six saloons on the way, and taking
a drink in each. Appellant's counsel lays great stress
on this last fact, claiming that it demonstrates that
both men were intoxicated at the time of the accident,
several hours later. The only evidence on this point,
however, is that of the plaintiff himself, who testified
that at the time of the accident both "were absolutely
sober," that he "had a definite recollection that we
didn't have over ten small glasses of beer," and that
he "doubted very much whether we drank more than
half of them," and that they "drank nothing after
leaving 22nd street." They left Twenty-Second
street about 11:15 P. M., and drove directly north on
State street to Indiana street and then west to the
tunnel shaft, arriving there about midnight. (There
is evidence that State street, south of Jackson boule-
vard, was paved with granite blocks. We find none
that it was paved with cobblestones, as counsel claims.)
On arriving at the tunnelshaft, Hunt went into the of-
fice and looked over his time books. The plaintiff went
into the boiler room and examined some machinery he
had helped to install. They remained at the shaft
thirty or forty minutes and then started for home,
driving east on Indiana street to State street and di-
rectly south on State street to Congress. As they ap-
proached Van Buren street, the horse became fright-
ened by the noise of a train passing along the elevated
road on that street, "got skittish and jumped about,"
and ran south at a gallop. Two policemen, who were
standing at the northwest corner of Van Buren and
State streets, testified that as the horse passed them,
it was galloping and continued to gallop "until it dis-
appeared in the partial darkness towards Congress

street." The plaintiff and the witness Peterson testified that Hunt had the horse under control twenty-five or thirty feet south of the elevated road; and all the eye-witnesses to the accident agree that as the horse approached Congress street it was trotting. At that time, the horse and buggy were on the west side of State street between the west rail of the car tracks and the west curb. As they reached a point about opposite the north line of Congress street, Hunt turned the horse eastward across the street car tracks to enter Congress street. The witness Strong, who was standing almost directly opposite them on the west sidewalk of State street, testified that they were then going "at a sort of jog trot," that they "made a kind of rounding turn" across the tracks toward the center of Congress street and that "the horse kept on trotting." One of appellant's large cars, operated and lighted by electricity, was coming up from the south on the east track. The plaintiff testified that he first saw this car before reaching Congress street and that it was then "down near Harrison street;" that just as the horse turned, he looked towards the car and that at that time it was "two hundred feet away, at the least"; that he could see the car was moving, and "supposed it was coming at the ordinary rate of speed"; that "it was far enough away to enable us to clear if the car was running at the ordinary rate of speed"; and that he "felt sure that we could clear the track." Whether Hunt saw the car approaching does not appear, except by inference from the fact that he was seen by several witnesses to urge the horse forward just before the collision. The plaintiff testified that he did not call Hunt's attention to the car, that he had the control over Hunt "in this way, that I could have taken it away from him if I wished"; that Hunt was an experienced driver, and "was driving satisfactorily and safely." The street car came on very rapidly and hit the rear wheel of the buggy with such

force that both Chambers and Hunt were thrown against the sidewalk at the northeast corner of the street intersection. Hunt was killed instantly, Chambers' skull was fractured, and he sustained other serious injuries.

There is no evidence that either Hunt or Chambers looked towards the approaching car after the horse turned to cross the tracks, and much is made of that fact in the argument of appellant's counsel. The space that intervened between the place where Chambers said he looked and the west rail of the east track was not more than seventeen feet. A horse going at a "jog trot" (assuming that means six miles an hour) goes seventeen feet in *two seconds*. It has been repeatedly held in this State that the mere failure of a traveler to "stop, look and listen" before crossing a railroad track at a public crossing is not negligence *per se. Chicago & J. Elec. Ry. Co. v. Wanic*, 230 Ill. 530, 535. *A fortiori,* if the traveler does look two seconds before he starts across, he cannot be held guilty of negligence merely because he fails to look again, or to keep on looking a second or two longer. Nor can it be held to be contributory negligence, necessarily and as a matter of law, to attempt to cross the tracks of a street railway company ahead of an approaching car. In *Chicago City Ry. Co. v. Sandusky*, 198 Ill. 400, a cable car collided at a street intersection with a junk wagon in which the plaintiff was riding, and it appeared from the evidence that before he attempted to drive across the tracks he looked down the street and saw a car approaching the crossing about half a block away. Nevertheless, he started across and was injured. It was contended that upon this evidence it must be held, as a matter of law, that the plaintiff was guilty of a failure to observe ordinary care for his own safety, but as to this contention, the Court said: "Attempting to cross the track of a street railway ahead of a moving car is not necessarily to be imputed

as contributory negligence. It may or may not be prudent, depending upon the proximity of the car and the speed with which it is moving. Whether, in the particular instance, reasonable care was exercised in going upon the track is usually a question for the jury, under proper instructions. (2 Thompson on Negligence, 1450.) The evidence in the present case was not such as to justify the court in declaring, as a matter of law, the appellee did not act with reasonable care for his own safety." In *Chicago Union Traction Co. v. Jacobson*, 217 Ill. 404, the driver of a heavy truck, loaded with flour, turned his team across the street car tracks in the middle of a block ahead of an approaching electric car. He saw the car coming a half block away, and after looking at it he gave no further attention to it. When nearly across the track, the car struck the rear end of the wagon, turning it over and throwing him from his seat to the pavement. The Court said that certain portions of the driver's testimony "would justify the conclusion that appellee knew, when he drove upon the track, that a collision would be inevitable in the ordinary operation of the car, unless the motorman of appellant should prevent the collision by his care and diligence. But appellee also testified that when he turned his team to cross the track the car was about one hundred feet east of Whipple street; that said street was about two hundred feet east of him, and that he thought he had time to get across the track. He was bound to exercise a reasonable judgment in view of all the circumstances, and the court, in passing on the motion (for a directed verdict), was required to consider all the evidence, including the distance of the car from the wagon, the rate of speed, and all the circumstances. We cannot say that in so considering it, the evidence necessarily led to but one conclusion, but we think that the question whether, under all the circumstances, appellee believed, upon reasonable grounds, that he had time

to get across the track before the car would reach him, was proper to be submitted to the jury.''

This language of the Supreme Court is peculiarly applicable, in our opinion, to the facts of this case. Whether it was prudent for appellee to cross the tracks of appellant ahead of the approaching car depends upon the distance he had to go, the apparent proximity of the car, the apparent speed with which it was moving at the time, and other like circumstances. Appellee was bound only to exercise a reasonable judgment in view of all the circumstances; and if, as he testified, after seeing the car and noting its apparent proximity and speed, he believed he had ample time to cross the tracks ahead of the car in safety, it was a question of fact for the jury whether, under all the circumstances, he had reasonable grounds for that belief.

This conclusion brings us to the second branch of the contention of appellant's counsel, viz., that the plaintiff was guilty of contributory negligence as a conclusion of fact from all the evidence. As to this, the theory of appellant's counsel is that the evidence shows ''that the car was running at a high but not excessive rate of speed, considering the hour and the locality; that plaintiff and his companion were driving south on the west side of State street at a reckless and uncontrolled rate of speed; that plaintiff and his companion were intoxicated; that when the northbound car was between twenty-five and forty feet away, the driver suddenly and erratically pulled the horse to turn east on Congress street, thereby bringing the vehicle immediately into the course of the car and necessarily producing the collision.'' If this theory were supported by the preponderance of the evidence, there would be little doubt that the conclusion for which appellant contends would necessarily follow. Our own examination of the evidence, however, leads us to the conclusion that the greater weight of the evidence

shows that the car was running not only at high speed, but at an excessive rate of speed, under the circumstances; that appellee and his companion were not driving "at a reckless and uncontrolled rate of speed," but had the horse under full control, and were going at a jog trot, or a little faster; that they were not intoxicated; that they had reasonable grounds to believe that they had time to get across the tracks before the car would reach them; and that the evidence of the defendant's witnesses, to the effect that Hunt turned his horse directly in front of the car when it was between twenty-five and forty feet away, is, to say the least, highly improbable, in view of the admitted fact that the car hit the rear wheel of the buggy. The evidence clearly shows, and appellant's counsel admits, that the distance from the point where Hunt turned the horse eastward to a point where the horse and buggy would have been wholly clear of the east track was about thirty-five feet. Several of the witnesses testified that when Hunt began to make the turn, the street car was "about opposite the Folly Theatre," which is located, according to one witness, "about the middle of the block" between Congress and Harrison streets; according to another "five or six doors" south of Congress street; and according to the plaintiff, at least two hundred feet south of Congress street. One witness testified that Congress street is fifty feet wide. If these witnesses are to be believed, and we see no reason to doubt them, then it follows that when Hunt began to turn, at or near the north line of Congress street, the street car was at least one hundred and seventy-five feet away, and the car must have been going at least five times as fast as the horse in order to hit the rear wheel of the buggy. Upon this evidence, two different juries have found that appellant was guilty of negligence and that the plaintiff was in the exercise of due care at and before the time of the accident. We cannot say they were not justified.

Finding no reversible error in the record, the judgment of the Superior Court will be affirmed.

*Affirmed.*